# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Jerry King and Virginia King, | Civil Action No. 4:20-cv-03806-RMG |
| Plaintiffs, | **ORDER AND OPINION** |
| v. | |
| The Travelers Home and Marine Insurance Company, and Brian Theriault, | |
| Defendants. | |

Before the Court is a motion for protective order filed by non-parties, Gedney M. Howe, III, Esq., Alvin J. Hammer, Esq., and The Law Offices of Gedney M. Howe, III, P.A. (Dkt. No. 25). For the reasons stated below, the motion is denied.

## I. Background

Gedney M. Howe, III, Esq., Alvin J. Hammer, Esq., and the Law Offices of Gedney M. Howe, III, P.A ("Movants") are former counsel to Jerry King and Virginia King ("Kings"). The Movants represented the Kings in a negligence action against a Travelers insured named Larry Grainger arising out of a 2014 motor vehicle accident ("underlying personal injury action").[1] (Dkt. Nos. 1-1 at ¶ 6; 25-1 at 1). In the instant action, the Kings are proceeding as the assignees of Mr. Grainger's claims against Travelers and Brian Theriault ("Defendants") for the handling

---

[1] The Kings initiated separate personal injury actions against Mr. Grainger arising out of the 2014 accident. Jerry King filed his case on October 17, 2017, C/A No: 2017-CP-26-06753, through attorney K. Douglas Thornton. Virginia King filed her case on January 15, 2015, C/A No: 2015-CP-26-00363, through her attorney Gedney M. Howe, III. (Dkt. No. 1-1 at ¶ 6). (Dkt. No. 1-1 at ¶ 6). The King cases were eventually consolidated under C/A No.: 2018-CP-26-06577. At the time of consolidation, attorney Jeffrey Ryan Heiskell represented the Kings. (*Id.*).

1

of Mr. Grainger's claim in the underlying personal injury action. The Kings bring claims against Defendants for: (1) breach of contract; (2) bad faith; (3) negligence; (4) negligent prosecution; and (5) violation of the S.C. Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20.

The Complaint alleges that on October 14, 2014, the Kings were each operating a motorcycle when Mr. Grainger caused a crash. (*Id.* at ¶7). The Kings allege they sustained severe injuries, incurred medical expenses upward of $1,000,000, and lost wages. (*Id.* at ¶¶ 8-9). Mr. Grainger admitted he was the sole cause of the accident. (Dkt. No. 29-2). Mr. Grainger had automobile liability insurance coverage through Travelers with liability limits of $500,000 per accident. (*Id.* at ¶ 13; 29 at 1).

On June 30, 2015, Travelers tendered to Movants and offered to pay the Kings the remaining single accident liability limits of $456,376.17, in exchange for a covenant not to execute the personal assets of Mr. Grainger. (Dkt. No. 29-1).[2] This offer was rejected. On July 29, 2015, the Movants demanded $1,000,000 from Travelers in exchange for a covenant not to execute and settle the case against Mr. Grainger. (Dkt. No. 29-2). On August 17, 2015, counsel for Travelers filed a federal declaratory judgment action seeking a determination of whether the accident was a single multi-vehicle accident or two accidents. (Dkt. No. 29-3).[3] In addition, counsel for Travelers sent a Conditional Settlement Offer ("CSO") to Movants. (Dkt. No. 29-3). The CSO proposed that Travelers pay the Kings $456, 376.17, which represented the remaining available coverage under the single accident liability limit. (*Id.*). In exchange, the Kings would agree to sign a covenant not to execute while reserving the right to litigate the issue of whether there is additional liability coverage available under Mr. Grainger's policy. (*Id.*). If the declaratory judgment action resulted in a judicial declaration that a second limit of $500,000 was available,

---

[2] Travelers paid the Kings $43, 623.83 for their property damage claims. (Dkt. No. 29-3).
[3] The declaratory judgment action has a Civil Action number: 4:15-cv-3260-RMG.

then after any appeal, Travelers would agree to pay the second $500,000 to the Kings per the terms of the CSO. (*Id.*). Defendants maintain the CSO was rejected.

In the declaratory judgment action, a dispute arose in 2016 over issues related to taking Travelers' 30(b)(6) deposition. Defendants maintain that on April 27, 2016, Movants and counsel for Travelers agreed that Travelers' 30(b)(6) deposition would be continued to May 3, 2016. In exchange, Travelers would pay the balance of the $500,000 single accident policy limit ($456,376.17) to the Kings and the Kings would provide a receipt for this amount as a credit against any judgment entered against Mr. Grainger. (Dkt. No. 29-5). On May 3, 2016, Brian Theriault, Travelers' 30(b)(6) deponent brought checks payable to Movants in the remaining amount available under the single accident liability limits ($456,376.17) for the Kings and Movants to execute. (Dkt. No. 29-6). The Kings allege that at this time, no release or covenant was presented to them. (Dkt. No. 1-1 at ¶ 16).

On January 26, 2017, the Court granted summary judgment in favor of Travelers, finding the accident constituted a single "accident" under the policy and the policy provided $500,000 in coverage. Thereafter, the Kings retained new counsel and proceeded with the personal injury action against Mr. Grainger. (Dkt. No. 1-1 at ¶ 21). On October 21, 2019, the Kings received a $3.75 million dollar judgment against Mr. Grainger. (*Id.* at ¶ 27). The Kings entered a covenant not to execute against Mr. Grainger's personal assets in exchange for an assignment of Mr. Grainger's claims against Defendant Travelers for its failure to obtain a release. (Dkt. No. 1-1 at 19).

In the instant action, the Kings allege that upon information and belief:

"[I]f the total funds of $456.376.17 had been accompanied by a release or covenant, then they would have been placed in trust until the parties received a ruling from the Court regarding the total insurance coverage available. Further, upon information and belief, if the Court ruled it was a single accident and that $500,000.00 was the total coverage available,

3

then Plaintiff's counsel, Gedney Howe, would have recommended that the Kings sign the release (accepting the $500,000) and the Underlying Action would have ended."

(Dkt. No. 1-1 at ¶ 17).

On November 5, 2021, Defendant Travelers issued identical subpoenas *duces tecum* for Movants Howe and Hammer to appear for a deposition scheduled for November 16, 2021. (Dkt. No. 25-2). Movants represent that during Mr. Hammer's deposition, Travelers sought privileged testimony protected by attorney-client privilege. (Dkt. No. 25-1 at 4). On November 23, 2011, Movants filed a Motion for Protective Order. (Dkt. No. 25). Movants seek an Order from the Court quashing the subpoena on the ground it seeks information protected by attorney-client privilege. Defendants filed a response in opposition arguing the Kings waived attorney-client privileged communications with Movants. (Dkt. No. 29). The motion is ripe for the Court's review.

## II. Legal Standard

Parties to civil litigation may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense" so long as the information is "proportional to the needs of the case. . ." FED. R. CIV. P. 26(b)(1). The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop his or her case. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) (noting that "the discovery rules are given 'a broad and liberal treatment'".) "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of discovery. FED. R. CIV. P. 26(c)(1). The court "must limit the frequency or extent of discovery . . . if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient,

4

less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *see also Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in [their] resolution of discovery problems arising in cases before [them].") (internal quotation marks omitted). To enforce the provisions of Rule 26, under Federal Rule of Civil Procedure 37, a "party may move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1).

### III. Discussion

Movants seek a protective order from the Court to quash the subpoena as to Howe in its entirety on the ground it seeks privileged information. Movants argue the subpoena seeks substantive legal conversations with the Kings related to the underlying personal injury action. (Dkt. No. 25-1 at 4).[4]

In order to "protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense," a District Court may enter a protective order upon a showing of "good cause" for doing so. FED. R. CIV. P. 26(c)(1). "To obtain a protective order . . . the party resisting discovery must establish that the information sought is covered by [Rule 26(c) and that [the party] will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998). In addition, a District Court may on its own initiative or in response to a motion for protective order under Rule 26(c), limit discovery if it concludes that a limitation under Rule 26(b)(2)(C) applies. *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).

---

[4] Movants maintain that prior to Mr. Hammers's deposition on November 16, 2021, Mr. Howe stipulated to a limited waiver of privilege with the consent of the Kings so Mr. Hammer could testify as to the allegation in the Complaint involving Mr. Howe at Paragraph 17. (Dkt. Nos. 25-1 at 4; 30 at 1).

In South Carolina, the party asserting the privilege has the initial burden to make a *prima facie* showing that the communications in question are privileged; if the initial burden is met, the party challenging the privilege must establish the communications are otherwise discoverable under an exception or waiver. *In re Mt. Hawley Ins. Co.*, 829 S.E.2d at 712-13. In diversity cases, the application of the attorney-client privilege is governed by state law- in this case, the law of South Carolina. *State Farm Fire and Casualty Company v. Admiral Insurance Company*, 225 F. Supp. 3d 474, 479 (D.S.C. 2016). The attorney client privilege belongs solely to the client and can only be waived by the client. *State v. Thompson*, 495 S.E.2d 437, 439 (S.C. 1998).

In this case, Defendant Travelers issued identical subpoenas *duces tecum* to Movants Howe and Hammer to appear for a deposition scheduled for November 16, 2021. (Dkt. No. 25-2). The subpoenas seek the following communications:

(1) "All [communications between Howe] and von Hermann Law Firm related to . . . Virginia King v. Larry Grainger . . . Jerry Allen King v. Larry Grainger . . . or Travelers Home and Marine Insurance Company v. Larry Grainger, Virginia King, and Jerry King . . .

(2) All [communications between Howe] and Elliot, Phelan & Kunz, LLC [the Kings' current counsel,] related to . . . Virginia King v. Larry Grainger . . . Jerry Allen King v. Larry Grainger . . . or Travelers Home and Marine Insurance Company v. Larry Grainger, Virginia King, and Jerry King . . .

(3) All [communications between Howe] and Heiskell Law, LLC [the Kings' current counsel], related to . . . Virginia King v. Larry Grainger . . . Jerry Allen King v. Larry Grainger . . .or Travelers v. Larry Grainger, Virginia King, and Jerry King . . .

(4) All [communications] reflecting or evidencing offers to settle, tender or pay any money in exchange for a release, covenant, or receipt in any of the following litigation Virginia King v. Larry Grainger . . . Jerry Allen King v. Larry Grainger . . . or Travelers Home and Marine Insurance Company v. Larry Grainger, Virginia King, and Jerry King . . .

(5) All [communications] reflecting or evidencing any willingness or consideration to accept payment of $456,376.17 in exchange for a release, covenant not to execute against Larry Grainger, or any type of agreement not to pursue Larry Grainger for any amount over this ($456,376.17) offered.

6

(6) All [communications between you] and vonHermann Law Firm reflecting or evidencing the negotiating and ultimate execution of any assignment/covenant not to execute entered into by Larry Grainger in favor of, or to, Jerry King and Virginia King."

(Dkt. No. 25-2).

In the motion for protective order, the Movants make a general claim the subpoena seeks information protected by the attorney-client privilege and attorney-work product. (Dkt. No. 25-1). The Movants' motion does not reference items one and six and does not otherwise specifically explain why the information sought is privileged. The Court finds Movants have not met their burden pursuant to Rule 26(c).

Defendant Travelers argues the Kings waived attorney-client privilege between Movants related to certain topics in the underlying personal injury action by initiating this lawsuit and putting the advice of counsel "at issue." (Dkt. No. 29). The Court will analyze the issue of waiver.

Waiver may be explicit or implied. While it is possible to implicitly waive the privilege, such a waiver must be "distinct and unequivocal" as is the case with an explicit waiver. *Id.* at 439; *State v. Hitopoulus*, 309 S.E.2d 747, 749 (S.C. 1983). "Under South Carolina law, a party may implicitly waive a privilege by placing a privileged communication 'at issue' in a case." *Berchtold Corp. v. Faegre Baker Daniels, LLP*, 2014 WL 12609704, at *2 (D.S.C. Dec. 3, 2014) (quotations and citations omitted). A waiver of the privilege occurs when "the party puts 'at issue' some fact which necessarily involves an examination of the attorney's advice or communication to the client.'" *Id.* (quoting *United States v. White*, 944 F. Supp. 2d 454, 459 (D.S.C. 2013)). The at issue doctrine is based on "notions of fairness and truth-seeking." *White*, 944 F. Supp. 2d at 459. A party waives the attorney-client privilege if (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue making it

7

relevant to the case: and (3) application of the privilege would have denied the opposing party access to information vital to his defense.'" *Berchtold Corp.*, 2014 WL 12609704, at *2.

The first waiver element requires that the assertion of the privilege was the result of an affirmative act. The Kings took an affirmative act by filing suit and responding to Defendants Travelers discovery requests.

The second waiver element requires that through the affirmative act, the asserting party put the protected information at issue. The Complaint alleges Defendants acted in bad faith toward Mr. Grainger by tendering the amount due to the Kings under the single accident policy limit ($456,376.17) without requiring the Kings to execute a release or covenant not to execute the personal assets of Mr. Grainger. (Dkt. No. 1-1 at ¶ 9, 30). The Complaint alleges that had Travelers tendered the amount due under the single accident policy limit ($456,376.17) along with a release or covenant, then that money would have been placed in trust until the parties received a ruling from the Court in the declaratory judgment action, and "if the Judge ruled that it was a single accident and that $500,000 was the total coverage available, then [King's] counsel Gedney Howe, would have recommended that the [Kings] sign the release (accepting the $500,000) and the [underlying personal injury action] would have ended." (Dkt. No. 1-1 at ¶17). These allegations place at issue in this action the advice Movants gave the Kings regarding efforts to settle the underlying personal injury action.

In addition, on June 30, 2021 the Kings answered Defendant Travelers' first set of Interrogatories. (Dkt. No. 29-8). The Kings identified Movants as witnesses in this matter and stated that Movants "are expected to provide testimony regarding the facts and circumstances surrounding the incidents in question." (*Id.*) For example, ROG 18 requests facts or documents that support the following Paragraph in the Complaint that alleges, "[c]ounsel for [Kings] fully

8

expected their clients to be required to sign a Release or Covenant at some point; however, none was received." (Dkt. No. 29-8 at 10) (citing Dkt. No. 1-1 at ¶ 30). The Kings answered ROG 18 as follows: "[Kings] have no direct knowledge and refer the Defendants to Gedney Howe and/or Alvin Hammer for the answer to this Interrogatory." (*Id.*). The Kings did not object on the basis of attorney-client privilege between themselves and the Movants. The Kings' discovery responses place at issue in this action, the Movants' advice to the Kings regarding any requests to sign a release or covenant in the underlying personal injury lawsuit.

The Kings also produced individual Affidavits in discovery. (Dkt. Nos. 29-12, 13). The Affidavits are identical and state:

> "If any type of release had been sent and accompanied the settlement checks in May of 2016- it is my understanding that we would not have received any net settlement funds until the Ruling from the Federal Court in January of 2017. Thereafter, if we had received a Release we would have followed the advice of counsel which we believe would have been to sign the Release (releasing Mr. Grainger from any type of liability) and dismissing the underlying civil action."

(Dkt. Nos. 29-12, 29-13). The Kings' Affidavits place at issue in this lawsuit, the communications between themselves and the Movants related to the Kings' course of signing a release or covenant and pursuing Mr. Grainger individually.

The third waiver element requires that application of the privilege would deny Defendant Travelers access to the information vital to their defenses. In the Amended Answer, Travelers asserts as a defense and as an affirmative defense that it tendered the applicable policy limits to the Kings in exchange for a release or covenant in favor of Mr. Grainger and that the Kings rejected this offer. In addition, Defendant Travelers alleges it made a CSO to Kings that included in part, a covenant in favor of Mr. Grainger that Movants rejected. (Dkt. No. 8 at ¶ 30). Defendant Travelers maintains that during the deposition of the Kings on November 19, 2021, they asserted attorney-client privilege in response to many of Defendant Travelers' questions

9

such as the information provided to the Movants, the information Movants gave to them, or advice they received and/or followed from Movants. (Dkt. No. 29 at 5). Defendant Travelers maintains that during the deposition of Mr. Hammer, he asserted attorney-client privilege related to these issues. (*Id.* at 12). Thus, the privilege would deny Defendant Travelers access to the information vital to a defense.

The Court finds all three waiver elements have been met and the Kings impliedly waived attorney-client privilege between themselves and Movants by placing privileged communications at issue in this case related to offers to settle the underlying personal injury lawsuit including Defendant Travelers COS, the Kings' intention to settle for the policy limits, the Kings' intentions to pursue Mr. Grainger individually, and Movants' advice to the Kings as to these items.

Defendant Travelers argues the Kings explicitly waived attorney-client privilege between themselves and Movants by producing several letters from counsel in discovery. The letters are from Movants to the Kings and contain counsel's advice related to the underlying personal injury lawsuit. The letters are dated September 17, 2015; May 3, 2016; December 8, 2016; January 7, 2019; and January 31, 2017. The letters contain information that would be protected by the attorney-client privilege. (Dkt. Nos. 29-9, 29-6, 29-7, 29-10, 29-11). For example, the letter dated January 31, 2017, discusses the Court's declaratory judgment Order ruling there was only $500,000 in available insurance and that it has already been paid. The letter states that Mr. Grainger may have $200,000 in available assets, but neither of the Movants were willing to continue to represent the Kings if they decided to pursue Mr. Grainger's personal assets because chances of recovering money from Mr. Grainger would be a "very difficult endeavor". (Dkt. No. 29-7 at 2-3). The Kings do not dispute that these letters were voluntarily produced to Defendant

Travelers during discovery. Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed but also to all communications between the same attorney and the same client on the same subject. *Templeton v. Bishop of Charleston, No.* 2:18-cv-02003-DCN, 2020 U.S. Dist. LEXIS 230297, at * 5-6 (D.S.C. Dec. 8, 2020); *Marshall v. Marshall*, 320 S.E.2d 44, 46-47 (S.C. Ct. App. 1984) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146 (D.S.C. 1975); *U.S. v. Jones*, 696 F.2d 1069 (4th Cir. 1982)). The Court finds the Kings have explicitly waived attorney-client privilege as to all communications between themselves and the Movants related to the topics contained in the letters.

### IV.     Conclusion

For the reasons stated above, the motion for protective order (Dkt. No. 25) filed by non-parties, Gedney M. Howe, III, Esq., Alvin J. Jammer, Esq., and Law Offices of Gedney M. Howe, III, P.A. is **DENIED**.

**AND IT IS SO ORDERED**.


                                        s/ Richard M. Gergel
                                        Richard M. Gergel
                                        United States District Judge


January 10, 2022
Charleston, South Carolina